## SUTPHIN v. UNITED STATES.

District Court, E. D. Kentucky, Frankfort.
July 9, 1936.

Perry B. Miller, of Louisville, Ky., for plaintiff.

Mac Swinford, U. S. Atty., of Lexington, Ky., and O. T. Englehart, Atty. Department of Justice, of Washington, D. C., for the United States.

FORD, District Judge.

The plaintiff, Ezra Sutphin, was an able-bodied young man in good health at the time he entered the United States Army on June 28, 1918. With a very limited education he had been a common laborer in the coal and lumber camps in West Virginia and, so far as the record discloses, had never been subject to any physical or mental ailments or disabilities prior to his induction into the Army.

While in training for overseas duty at Camp Lee Virginia, he suffered a sun stroke or heat prostration causing unconsciousness as a result of which he was confined to the hospital. Soon thereafter, while on his way to France, he was engaged in handling boxes of supplies on shipboard, and one of the heavy boxes fell from the top of the pile above and struck him upon the head, severely wounding him and rendering him unconscious, necessitating medical treatment. About a week after this injury and while still aboard the ship, he began to have convulsions or "fits" which, from the description in the record, appear to have been epileptic seizures. They were violent in their nature, rendering him totally unconscious for varying periods of time. During his stay overseas, these epileptic seizures recurred at intervals of about 40 days, and he was assigned to only very light work in the kitchen, and from time to time was confined in Army hospitals. He was returned home and discharged from the Army on July 22, 1919.

After he returned home he continued at varying intervals to have these epileptic seizures which apparently came on him without warning and with extreme violence. During the 18 months following his discharge, his family physician was present on three or four occasions when he was in "convulsions." Finally, on October 24, 1922, he was examined at Charleston, W. Va., by Dr. M. I. Mendeloff, medical examiner for the Veterans' Bureau, and his general diagnosis was "epilepsy grand mal." The prior history of his case, as given in the physician's report at that time, discloses the fact of his periodic epileptic convulsions on shipboard and during his stay overseas. After the veteran's discharge, he returned to his father's home in West Virginia. Notwithstanding the frequent recurrence of these epileptic convulsions, he secured some employment from time to time in lumber camps, road construction work, and did some little work on the farm. In most cases his condition of health and recurrence of epileptic seizures resulted in loss of his employment. On one occasion he fell in his home and was severely burned; on another occasion he was seized with a convulsion while riding on a log train; and at another time while engaged in a lumber camp he pitched headlong down the mountain.

In 1926 the medical staff of the Edward Hines Government Hospital at Chicago reported him totally and permanently disabled and mentally incompetent, and in the same year he was adjudged incompetent by the Morgan county court and a committee appointed for him.

This action was filed on his behalf by his committee on December 30, 1929, seeking to recover the benefits of a war risk insurance policy which was issued to him by the government during his service in the Army, by the terms of which he was insured in the sum of $10,000 against total and permanent disability during the life of the policy. The premiums on the policy were deducted from the soldier's pay while he was in the service, and the policy lapsed in July, 1919, for nonpayment of premiums.

No serious question is made by the government and no substantial doubt expressed as to the permanence of this veteran's affliction. No government medical records are produced relative to the veteran's hospitalization or treatment while in the Army prior to his discharge, and no evidence is introduced, other than the veteran's statement signed at the time of discharge, to contradict the plaintiff's evidence in respect to his condition during the life of his policy. Without seriously disputing that since 1926 the veteran has been totally and permanently disabled, the government insists that substantial proof is wholly lacking to establish the fact that prior to the lapse of the policy the veteran's disease or affliction had progressed to such a stage that he was "totally disabled" within the meaning of the policy. As indicative thereof, the government points to the veteran's own certificate as to his good health at the time of his discharge, his long delay in instituting suit on the policy, and to his labor record during the years immediately following his discharge.

█ It is true that this evidence somewhat weakens the testimony introduced on behalf of the plaintiff, yet, as said by the Supreme Court in the case of Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 276, 78 L.Ed. 492, "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life."

Considering the nature of the disease with which the veteran was afflicted, the ever present danger of convulsions rendering him unconsious, causing him to fall prostrate without warning, it cannot be said that his work record disclosed by the testimony is sufficient to conclusively negative total disability. Apparently the epileptic seizures recurring frequently during his Army service and prior to the lapse of his policy were of the same violent, extreme type known in medical terminology as "grand mal." It can scarcely be doubted that one so afflicted physically and mentally could not engage with reasonable continuity in any substantially gainful occupation. Merely to be away from home unattended would subject him to an ever present hazard to health and life even if under such circumstances he could hope to find or retain regular employment. It is true that there may be cases of epilepsy where the seizures are so infrequent or mild as to scarcely inconvenience or disable the patient, but such is not this case.

Viewing the evidence, as we must, in the light most favorable to the veteran, and giving some weight to the undisputed evidence as to his condition immediately subsequent to the lapse of his policy, it seems a fair and legitimate inference, based upon substantial testimony, that, during the life of his insurance policy, the plaintiff was by reason of epilepsy "grand mal" permanently and totally disabled. Under the particular circumstances of this case, the evidence introduced by the government is not sufficient to negative that conclusion.

Let judgment be entered for the plaintiff.