## PLOCHER v. UNITED STATES.
### No. 6716.

Circuit Court of Appeals, Sixth Circuit.
Feb. 12, 1937.

Henry J. McGinness, of Cleveland, Ohio, and Baird & Vandemark, of Elyria, Ohio, for appellant.

Frank Wiedemann, of Cleveland, Ohio (E. B. Freed and William Holsinger, both of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Suit by the guardian of William Spencer Coon upon a war risk insurance policy. The policy lapsed on August 29, 1919, unless the veteran was then permanently and totally disabled. The court directed a verdict for the defendant. The question is whether there was substantial evidence that the veteran became totally and permanently disabled during the life of the policy.

The veteran was incapacitated in a hospital at Buffalo, N. Y., in April or May, 1919. His wife testified that while he was there he lay as if dead. He was discharged from the army on July 30, 1919, and was brought on a stretcher by two attendants from Buffalo to a hospital at Elyria, Ohio, where he remained about three weeks. On July 30, 1919, he was examined by Dr. Stevens, a specialist in psycopathic and mental conditions, who testified that he lay in bed with his eyes closed; that he was mute; soiled the bed; had to be fed with a spoon and did not respond to questions. Dr. Stevens' diagnosis was, catatonic dementia praecox, a progressive and incurable disease. He testified that "progressive" in this connection connotes that though there may be apparent temporary recoveries a return of the symptoms is certain and they become more severe as time goes on. He also testified that the veteran was then, July 30, 1919, totally disabled and that the duration of his disability was for life, although he qualified this statement on cross-examination by saying:

"It is possible a case of dementia praecox could carry on a period of employment ranging four or five years regularly at a gainful occupation, and do so with a fair degree of satisfaction; but the occupations which these patients are able to carry on are usually of a manual and low grade type of occupation, such as chicken farming, farming, working on roads, highways; but anything which requires brain work, such as clerical duties, keeping a store, factory work, is beyond them."

The veteran was discharged from the Elyria Hospital on August 13, 1919, and removed to the home of his mother-in-law, where he remained about three weeks. His hospital record contains the entry, "Diagnosis, insanity (dementia praecox)." His wife remained constantly with him at the hospital and after he was removed, caring for him and feeding him, but he did not recognize her until about three weeks after he left the hospital. His eyes were "starey" and "glassy." When he began to talk, his conversation was disconnected.

In the fall or winter of 1919, the veteran and his wife moved to Cleveland, Ohio, where he worked intermittently for about a year with the Sheet Metals Product Company. During this time he was unable to get along with his fellow workmen. He

complained that a machine was working on his head and mind; that his wife and other persons were operating the machine; that he himself was simply a machine; that his family were his worst enemies; that books were being written about him and songs were being sung about him; and that the radio was created to annoy and harass him. Before the veteran left Cleveland, he was out of work entirely for about a year. He and his wife then moved to a truck farm near Dover where they lived about a year. They worked together on the farm. He told his brother that he intended to plant the crops, but he did not intend to harvest them or allow them to be harvested.

He was under guardianship because of unsoundness of mind from 1919, until some time in 1921, when his guardian, his brother, was discharged and the veteran restored to the full rights of citizenship.

The veteran worked as a section hand for the New York Central Railroad from February 13, 1925, until August 24, 1926. He worked about two weeks in December, 1926, re-entered the service April 1, 1927, and worked until April 17, 1929. His total earnings during the period of this employment were $3,220.79. He was off from work twenty-five days in 1925, twenty-nine days in 1926, eighteen days in 1927, nineteen days in 1928, and eleven and one-half days in 1929. While he worked for the New York Central Railroad, he made application for membership in its Mutual Relief Association, in which application he stated that he had not suffered any mental infirmity. Appellant was appointed his guardian in 1928 because of his incompetency and incapacity and the guardianship continued to the time of the trial.

The veteran was an employee of the Ohio Engineering Company from May 9, until October 1, 1930, and from April 23, to May 20, 1931, during which periods he earned a total of $400.92. His eccentricities continued during the periods of his different employments.

His work record aside, we cannot say as a matter of law that the veteran was not totally and permanently disabled before his policy expired. There was direct and substantial evidence from which a jury might reasonably conclude that he was. In this respect the case differs from United States v. Lyle, 54 F.(2d) 357 (C.C.A. 6), which the District Court regarded as controlling. In that case there was no direct evidence that Lyle was of unsound mind prior to the expiration of his policy. Here the determinative question is whether the extent and character of the veteran's work record completely refutes the evidence tending to show that he was totally and permanently disabled before August 29, 1919. We cannot say as a matter of law that it does, when viewed in the light most favorable to him. In Lumbra v. United States, 290 U.S. 551, 558, 54 S.Ct. 272, 275, 78 L.Ed. 492, the court said: "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case"; and 290 U.S. 551, at page 560, 54 S.Ct. 272, 276, 78 L.Ed. 492, "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time."

So that the extent and character of the veteran's industrial record is not always determinative. A material inquiry was whether he was able to work. That question was determined against the veteran as a matter of law. The District Court said, "Now, the evidence here is perfectly clear that he was able to work because he worked, and worked very substantially for very substantial periods." Thus, the court refuted the veteran's claim by reference to his own conduct. It is true that a veteran's acts and statements might so clearly indicate his own disbelief that he was totally and permanently disabled as to warrant a directed verdict against him. See Lumbra v. United States, supra, 290 U.S. 551, at page 560, 54 S.Ct. 272, 276, 78 L.Ed. 492. This is especially true where the ailment complained of is purely physical, but we are dealing with a different situation. The veteran was suffering with a pronounced type of catatonic dementia praecox, a progressive and incurable mental disease. The permanency of the malady and the inevitableness of resulting total disability were reasonably predictable during the life of the policy and so caused it to mature. In this aspect the case is differentiated from the Lumbra Case and United States v. Gwin, 68 F.(2d) 124 (C.C.A. 6). The Lumbra Case did not involve dementia praecox and the opinion in the Gwin Case indicates nothing more than "incipient de-

mentia praecox" at the time the policy was alleged to have lapsed. It did not appear that Gwin's disease was the severe, catatonic type, during the life of the policy.

We think that the determination of whether the veteran's industrial record destroyed his claim necessitates a finding upon the debatable question whether he acted upon sound judgment, or, affected by the vagaries of a disordered mind, took risks with his health or life. This question is peculiarly one for the consideration of a jury.

Appellee urges upon the authority of the Lumbra Case that the delay in bringing suit from August 29, 1919, to October 10, 1932, was strong evidence that the veteran was not permanently and totally disabled before the earlier date, but he could not himself sue while he was under guardianship, and a jury might reasonably conclude that for the remainder of the time he could not appreciate his condition or understand his legal rights. United States v. Newcomer, 78 F.(2d) 50, 53 (C.C.A. 8).

The judgment is reversed and the case remanded for a new trial.