## TIEBEN v. UNITED STATES.
### No. 6455.

Circuit Court of Appeals, Seventh Circuit.
May 11, 1938.

Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, and Fendall Marbury, Sp. Asst. to Atty. Gen., James R. Fleming, U. S. Atty., of Fort Wayne, Ind., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., and Alexander M. Campbell, Asst. U. S. Atty., of Fort Wayne, Ind., and Keith L. Seegmiller, of Washington, D. C.

Clarence E. Benadum, of Muncie, Ind., and Byron G. Jenkins, of Portland, Ind., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This action is to recover total and permanent disability benefits under a contract of war risk term insurance in the sum of $10,000 issued to plaintiff's ward while in the military service of the United States during the World War. The case was tried by jury, which found for the plaintiff. Judgment, from which this appeal is taken, was rendered thereon.

The complaint alleged that during the period of the insured's military service, and while his insurance was in force, he became totally and permanently disabled by reason of bronchitis, influenza, rheumatism, paresis, extreme nervous disability, insanity, and general nervous and physical disabilities. At the trial it was

stipulated that the insured entered the military service June 15, 1917; that the insurance was granted him January 2, 1918; that he was discharged April 10, 1919; and that his insurance expired May 31, 1919, for nonpayment of the premium due May 1, 1919; and that plaintiff made a claim for insurance benefits June 30, 1931, which was denied October 31, 1935.

·The only question here presented is whether there is any substantial evidence that the insured became totally and permanently disabled during the period of insurance protection under his policy which expired May 31, 1919, which question was appropriately raised by defendant's motion for a directed verdict.

██ ·The record discloses that the insured was engaged in clerical work at the time he entered the service, was in good health, an apt scholar, a musician, and very popular with his associates. His army record discloses that while in the service he was confined to hospitals on numerous occasions, his ailments generally being diagnosed as bronchitis, influenza and catarrh and that he was under observation for pulmonary tuberculosis. He was sent home from France on account of the latter ailment. Plaintiff relies largely on the testimony of lay witnesses, fortified to some extent by medical testimony in support of her contention that there is substantial evidence that the insured became totally and permanently disabled on or prior to the expiration date of his insurance policy. The ailment or disease relied upon is mental and described as dementia præcox. The defendant contends that the insured did not suffer from such ailment until several years after his discharge from the service, or, if he were so afflicted at an earlier period, the disease was merely in its incipient stage and not such as to permanently and totally disable the insured. Since early in 1926, the insured has been confined in a government institution by reason of insanity, dementia præcox. It is not disputed that since such confinement he has been totally and permanently disabled. The government physician described his mental condition at that time as that of a child eight or ten years of age and stated that such cases come on suddenly or can be of long duration. Although his army record makes no mention of his mental condition, there is testimony from those who saw and ob-

served him in the service that he acted peculiarly and that his mental condition was not what it was prior to his enlistment.

There is much evidence to the effect that he suffered from a severe mental condition from the time of his discharge until his commitment to the government hospital, and, of course, to the present. Upon his return from the service he went to his mother's home. At that time he was suffering from delusions and mentally unbalanced. He had a strong resentment against members of his family and imagined they were following him. He was possessed of the idea that they would poison him and would carefully examine his food before eating, to determine if there was anything wrong. He refused to associate with former friends and was unable to coherently carry on conversation. He would laugh hilariously without any apparent reason, would get up at night and walk around the house, making noises, alarming members of his family to such an extent that they would lock their doors. He was uncouth in his appearance and had a cave dugout in the ground where he spent much of his time, sometimes overnight. This narration is merely typical of the description given of insured by various witnesses. He was employed by the Ford Motor Company from June 24 to November 20, 1919, and from May 9, 1922, to April 4, 1924, and by the International Motor Company from January 27 to April 6, 1920. When first employed by the Ford Company, he was assigned to the work of building boats, which was too heavy for him, and he was given an office position where his duties consisted mostly of running errands. During the period of this employment his conduct was erratic and work irregular. On one occasion, upon a blast of dynamite, he became excited, got under a desk, and came out as white as a sheet. He would disappear for two or three days at a time without explanation, was absent-minded and in a highly nervous condition. In explanation of why the company employed a person in insured's condition, a foreman testified: "I had orders to take care of crippled soldiers when they came back; I hired them to get them off the streets; I took an interest in Tieben and tried to help him along by giving him special assistance." His first employment with Ford was terminated by reason of five days'

absence from work without notice. During the two and one-half months' employment by the International Motor Company he seems to have worked rather regularly. During the insured's last employment by Ford he was paid for 1922, $1,017.95; 1923, $1,501.55, and in 1924, $376.50. The record does not disclose the total amount received by insured from Ford during his first employment there or the amount paid him by International Motor Company, but there is evidence to the effect that he lost one day out of four, and that during the period of his employment he was not dependable.

Dr. Mark M. Moran, who had been insured's physician before the war, saw and examined him on April 15, 1919, five days after his discharge. Among other things, he testified: "At that time when he came to my office he showed great depression and was extremely nervous. I remember that he cried some when he was in the office without any apparent reason. There wasn't a definite diagnosis made." This doctor thereafter saw and examined insured at various times. During 1921, he observed the insured at different periods and stated "his physical condition was very good during that year, but his mental and nervous condition still remained bad." He again examined insured March 17, 1924, and described his condition as unchanged. He testified that insured, in the latter part of 1925, became violent. Insured was described by this doctor as being unable to work at the time he first examined him after his discharge from the service and testified: "I think this dementia præcox carried all the way through over the period that I saw him in 1919 until 1924. As I go back over it, and recall the examination the first day he came to my office, he broke down and cried. A few remarks he made then and afterwards, saying he was unable to be with his family on account of noises made at the table and would have to leave home —When I recall these events, I would say that he had dementia præcox from the first time I saw him."

Dr. Milton J. Haas, on the other hand, testified that the insured visited him two or three days shortly after his return from France and that he noticed no abnormality, either mental or physical at that time. The government sought to corroborate this testimony by other physicians, but their testimony pertains to the physical rather than the mental condition of insured. The government relies largely upon the insured's work record and insists it is such as to preclude plaintiff's contention that he was totally and permanently disabled.

Many cases are cited in support of this contention. It would serve no useful purpose, however, for us to undertake to analyze or distinguish them from the facts before us. The case of Lumbra v. United State, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492, is perhaps as favorable to the Government as any to which our attention is called. The work record, however, in that case, covered a much longer period than is here presented and was performed under circumstances which distinguish it from the instant case. It was there said by the court (290 U.S. 551, at page 559, 54 S.Ct. 272, 276, 78 L.Ed. 492): " 'Total disability' does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary. Separate and distinct periods of temporary disability do not constitute that which is permanent. The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability."

There can be no question but what plaintiff's ward, at the time of his discharge from the service, was suffering from a mental ailment permanent in its character. Whatever doubt there might have been at that time concerning its permanency was dispelled by its subsequent progress and final determination. We also think there is substantial evidence that it was total, as that term is defined: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability."

Undoubtedly there is merit in defendant's contention to the contrary. Insured's work record, in connection with the testimony of at least one physician who had an opportunity to examine and observe him shortly after his discharge from the army, is such as to afford ample basis therefor. We are obliged, however, to consider the testimony in the light most favorable to plaintiff. So was the District Court on defendant's motion to direct a

verdict and we conclude the issue was properly submitted to the jury. Having been thus submitted, we are not at liberty to substitute our judgment for that of the jury.

Judgment affirmed.