THE NEW YORK CENTRAL RAILROAD COMPANY *v.* GREEN, ADMINISTRATRIX.

[No. 15,888. Filed June 29, 1938.]

*Charles O. Baltzell, Gerald E. Hall, Carl M. Gray, Morton C. Embree, Samuel M. Baxter* and *Charles P. Stewart,* for appellant.

*Arthur S. Wilson* and *Claude A. Smith,* for appellee.

CURTIS, P. J.—This was an action by the appellee, Ethel M. Green, administratrix of the estate of Marion H. Green, deceased, against the appellant, The New York Central Railroad Company, in the Gibson Circuit Court to recover damages for the death of appellee's decedent, alleged to have been caused by the negligence of the appellant. The appellee's decedent was run over by one of appellant's trains, between crossings, while he was lying between the rails of appellant's railroad track. It is agreed by all parties that the second paragraph of the amended complaint, upon which the case was tried, was drawn upon the theory of the "last clear chance" and that the case was tried upon that theory. There was an answer in general denial.

There was a trial by jury resulting in a verdict in

favor of the appellee, and against the appellant in the sum of five thousand two hundred and fifty ($5,250) dollars. Judgment was rendered in accordance therewith.

The allegations of the second paragraph of the amended complaint place the scene of the accident as approximately three hundred yards north of the depot of the village of Buckskin. We now quote from said paragraph as follows:

"That for more than three hundred yards north of said station aforesaid there were, on the 8th day of June, 1935, numerous footpaths leading on, upon, over and across the tracks and right of way of said defendants, on which travelers and persons were accustomed to travel and habitually traveled to and from the south and north and west sections of that part of said Village of Buckskin; that the defendant, its agents, servants and employees, was then, and all during the times herein mentioned, running passenger and freight trains from the City of Indianapolis to the City of Evansville, over their lines aforesaid, and well knew that said persons and travelers used and traveled over said footpaths as aforementioned. That plaintiff's decedent resided with his wife and children on and prior to the 8th day of June, 1935, in the said Village of Buckskin, where his home was then and there located and situated, a short distance from the defendant's right of way and tracks at said place; that on said 8th day of June, 1935, the plaintiff's decedent was traveling in a southerly direction on, upon and over one of said paths leading south upon and over defendant's right of way and tracks at a point approximately three hundred yards north of their said station or depot; that as and when plaintiff's decedent traveled and walked over one of said footpaths, upon and over said defendant's tracks and right of way, in a southerly direction thereon, the said defendant, its agents, servants and employees, drove, operated and controlled one of its engines and trains from the north in a southerly direction along, upon and over said tracks at said point and proceeded south thereon as aforesaid.

"That as and when said defendant's company, its

agents, servants and employees operated and controlled its said engine and train from the north, approaching plaintiff's decedent on said track at an approximate distance from one mile to one-half mile north, traveling in a southerly direction on said main track, and said defendant, its agents, servants, or employees, had a plain view of plaintiff's decedent on said track and saw the plaintiff's decedent on said track and right of way, and knew and realized that said decedent was unaware of the approach of its said engine and train from the north, traveling south on said main track, and said defendant, its agents, servants and employees saw and realized the dangerous position of said plaintiff's decedent, and saw and realized and knew his imminent peril as he walked, stood or was present upon said track in front of their said engine and train at least a quarter of a mile in advance of their said engine and train, knew and realized that he was unaware of the approach of their said engine and train toward plaintiff's decedent as they traveled in a southerly direction; and that said defendant, its agents, servants, or employees, further knew and realized that plaintiff's decedent's attention was not directed to the approach of their said engine and train on said main track as aforesaid, and that said plaintiff's decedent was unable and did not hear the approach and sound of said defendant's train approaching said decedent on said main track; and, further, saw and realized the perilous position of said decedent, his imminent danger from said approaching engine and train, in ample time, with the means therefor at hand of the defendant, its agents, servants or employees to have checked, signaled, sounded the whistle, rang the bell, and stopped said engine before running at, against, into, upon and over plaintiff's decedent and injuring him as hereinafter alleged, from which injuries he thereafter died but that the said defendant, its agents, servants and employees did negligently, carelessly and recklessly fail and refuse to check or slow down the speed of said engine and train, or to stop the same, notwithstanding that said defendant, its agents, servants and employees saw, knew and realized the dangerous and helpless condition of plaintiff's decedent on their said tracks and right of way in ample time to have checked, slowed down the speed

or stopped its said engine and train and avoided hitting and striking said decedent as hereinafter alleged, but did then and there negligently run its said engine and train onto, against, upon and over plaintiff's decedent with great force and violence, maiming, mangling, injuring, rendering unconscious and otherwise mortally wounding and injuring plaintiff's decedent, all as the result of said negligent acts of the defendant, its agents, servants and employees, as aforesaid; plaintiff's decedent received wounds, lacerations, bruises and injuries such that he suffered great pain and anguish, and did thereafter languish and die on the 9th day of June, 1935, as the result of said injuries. Plaintiff charges, further, as a fact, that said defendant, its agents, servants and employees, saw and knew and realized the helpless condition of plaintiff's decedent and his failure to observe said defendant's train approaching said decedent on said track as aforesaid, while plaintiff's decedent was in imminent danger and in a perilous and helpless position at said time and place, and could have, in the exercise of ordinary care, avoided injuring the plaintiff's decedent by slowing down the speed or stopping said engine and train. Plaintiff further avers that the negligence of said defendant, its agents, servants and employees in failing to check, stop and slow down the speed of said engine, or to warn the plaintiff's decedent by ringing the bell or giving any blast of the whistle, or any signal whatsoever, in ample time, of the approach of said engine and train as aforesaid, and the further negligence of said defendant, its agents, servants and employees in operating and running said engine and train at a negligent, careless and reckless rate of speed from and after having seen said plaintiff's decedent on said track and knowing his helpless condition thereon, thereby striking and hitting said decedent, and further negligence of said defendant, its agents, servants and employees in failing to check, slow down the speed of, or to stop said engine within the distance of at least four hundred yards from and at the time the said defendant, its agents, servants or employees first saw plaintiff's decedent on said tracks in said helpless condition and imminent peril, thereby negligently, carelessly and recklessly running said engine and train onto, upon,

over and against plaintiff's decedent, caused the injuries and death to plaintiff's decedent as aforesaid."

At the close of the appellee's case in chief the appellant moved for a directed verdict, which motion was overruled and an exception reserved. The appellant then rested its case and again at the close of all of the evidence moved for a directed verdict. This motion was likewise overruled and an exception reserved.

The appellant seasonably filed a motion for a new trial which was overruled with an exception and this appeal then prayed and perfected. The error assigned is the ruling on said motion. The causes or grounds of the motion that need to be considered herein are the alleged errors in refusing to give the said peremptory instructions.

The controlling evidence in this case is not conflicting and shows that the appellee's decedent was killed by one of the appellant's trains while he was lying in the center of the appellant's railroad tracks at a point approximately 795 feet north of the appellant's depot in the village of Buckskin, Indiana. There was no crossing at or near the place of the accident and it occurred outside of the village. The railroad ran substantially north and south through the village and looking north from the village the tracks were up grade. The train that killed him was a south bound mixed train consisting of a baggage coach, passenger coach and thirteen empty coal cars all equipped with automatic air brakes in good working order. The evidence does not disclose the condition of the appellee's decedent before the accident nor the reason for his lying between the rails of the appellant's main track. In the attempt to make out her case the appellee called as a witness the engineer in charge of the said train. The pertinent part of his evidence is substantially as follows: When I saw this

man on the track and began to stop my engine I was from one hundred fifty to one hundred sixty feet from him traveling at the rate of thirty miles per hour; we sand the track to make a quick stop using a sand valve; it is handy to shut off the throttle, set the brake and open the sand; these operations require possibly five or six seconds; I saw the man on the track at the same time that the fireman called me and said there was a man on the track; when I saw the man I set the brake in emergency, closed the throttle and opened the sand and then reversed the engine and when the man did not move I started blowing blasts of the whistle in an effort to arouse him; I blew these blasts of the whistle after I made every effort to stop the train and continued until after I saw that the man could not get off the track; the bell was operated automatically by air and continued to ring from the time I started to blow blasts for the private road crossing which was about a quarter of a mile back on the track; the train was brought to a stop after it had run two hundred fifty to three hundred feet after the emergency brakes were set and after the engine and tender and one car and the front truck of the second car had passed over the decedent; the operation of reversing the engine is the same that is used to back the train and the effect would have been to back the train if it hadn't been pushing forward; there was no other possible operation I could have made in order to stop this train and nothing else could have been done; I did everything as fast as I could, immediately and instantly upon seeing the man on the track; the man never moved while he was in my vision.

Under the above evidence standing alone and given by the appellee's own witness, there could be no doubt but that a verdict and judgment in favor of the appellee would have to be reversed. The unexplained fact that the decedent was lying between

the rails of the main track of the appellant on its private right of way and far from any crossing made it unnecessary for the appellant to do more than maintain a general lookout which it did for his protection. When he was thus discovered and his imminent peril became apparent to the appellant it then became the duty of the appellant under the humane doctrine of last clear chance to use due care in using every means at hand to prevent his injury. The evidence above shows that every means at hand was used to no avail by the appellant after the decedent was thus seen lying between the rails of the appellant's track. The rule of law as to the last clear chance as applicable herein contemplates that the servant of the appellant in charge of the operation of its locomotive (the engineer) must actually know that the decedent was in a place of peril, in a helpless condition and in imminent danger, in time with the means at hand to have stopped the locomotive before it struck the decedent. Negligently failing to use due care to stop the train under such circumstances thereby causing the injuries would give rise the liability. For cases on last clear chance see: *Southern Railway Co. et al.* v. *Wahl* (1925), 196 Ind. 581, 149 N. E. 72; *Terre Haute, Indianapolis & Eastern Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 123 N. E. 785; *Engle* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway Co.* (1926), 197 Ind. 200, 149 N. E. 643; *Heldt* v. *Thomson* (1927), 86 Ind. App. 270, 157 N. E. 60.

But the appellee earnestly insists that although the evidence of their witness, the engineer, shows clearly that when he discovered the peril of the decedent at a distance of one hundred fifty feet to one hundred sixty feet, he immediately used every means at hand to stop the train in time to avoid the injury, yet the jury was warranted in drawing the inference that such was not

the fact and that he discovered the decedent's peril much before the time he stated he did in his evidence and that he did not act promptly upon such discovery. The appellee bases much of her argument in that respect upon the evidence of the two witnesses by the name of Harris. William Harris testified that he had a conversation with a member of the train crew immediately after the accident as follows: "And I asked if they hit a cow. He said 'No, a man.' I said 'Where is he?' He said 'Up by the coal car,' to go up and see who it was. I said 'No' I would get my dad. I said 'How come you to hit him?' He said 'He was lying between the tracks and we thought he would get up, and when he didn't make any effort to get up we tooted the whistle.'" The other Harris testified to a conversation shortly after the accident with the head brakeman as follows: "He said that he seen the man on the track, but thought he would get out of the way. He said he did make an effort to get up but he didn't get out of the way." These and other witnesses testified to hearing several short blasts sounded by the whistle. We have examined the evidence of all of the witnesses and fail to find that any legitimate inference could be based thereon to the effect that the engineer in charge of the locomotive failed to use reasonable care and diligence in applying the emergency measures to stop the train when he discovered the peril of the decedent. It is to be remembered that the engineer stated the fact to be that he discovered the peril of the decedent when the train was one hundred fifty to one hundred sixty feet from him and that he used all of the means at hand to stop the train and that there were no other methods of stopping the train than those used by him. There is no conflict whatever in this phase of the evidence.

Verdicts rightfully stand upon evidence and not upon mere conjecture. The mere possibility that a thing may

be true will not legitimately sustain the inference that it is true. See *C. C. C. & St. L. R. R. Co.* v. *Miller* (1898), 149 Ind. 508, 49 N. E. 445; *Equitable Life Ins. Soc. of the United States* v. *Campbell* (1926), 85 Ind. App. 450, 150 N. E. 31, 151 N. E. 682; *Deery* v. *Hall* (1933), 96 Ind. App. 683, 175 N. E. 141. When a fact is clearly established by the undisputed evidence there is then no room for an inference that such fact does not exist. In passing it may be noted also that the appellee introduced no evidence whatever as to the distance required under the conditions then existing at the time and place of the accident to stop such a train.

With great care we have examined the evidence herein and conclude that the court erred in not giving to the jury the peremptory instructions requested by the appellant. Other questions are presented by the appellant but need not be discussed for any such alleged errors are not likely to occur in a retrial of the case.

Judgment reversed with instructions to sustain the appellant's motion for a new trial and for further proceedings not inconsistent herewith.