John T. SHELLEY, by the Louisville Trust Company, Committee, and Louisville Trust Company, Committee for John T. Shelley, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 2894.

United States District Court
W. D. Kentucky, at Louisville.
June 13, 1956.

Blakey Helm, Louisville, Ky., for plaintiffs.

J. Leonard Walker, U. S. Atty., Chas. M. Allen, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The plaintiff, Louisville Trust Company, as Committee for John T. Shelley, filed this action March 5, 1955, seeking to recover the monthly disability benefits alleged to have accrued to John T. Shelley since January 21, 1926, on which date it is alleged a policy of war risk term insurance issued to John T. Shelley, while a soldier in the United States Army in the First World War, matured by reason of Shelley's total and permanent disability.

The case was tried to the Court without a jury November 30, 1955.

Counsel have filed briefs and suggested findings of fact and conclusions of law, the last brief having been filed March 12, 1956.

From the evidence heard, the exhibits filed, the Court makes the following—

### Findings of Fact

I. John T. Shelley, a resident of Louisville, Jefferson County, Kentucky, was on July 29, 1936, by judgment of the Jefferson Circuit Court at Louisville, Kentucky, adjudged to be insane and the Kentucky Trust Company was by the orders of that Court appointed a Committee for Shelley and qualified. Said Trust Company resigned as such Committee October 31, 1955 and the Louisville Trust Company was appointed successor and qualified November 3, 1955.

II. John T. Shelley entered military service in the United States Army June 25, 1918, and served until he was honorably discharged on May 8, 1919. While in the service there was granted a policy of war risk term insurance in the sum of $10,000 effective July 1, 1918, which, inter alia, provided that in the event the soldier should become totally and permanently disabled while the policy was in force, he would be entitled to receive monthly disability benefits in the amount of $57.50.

III. John T. Shelley paid the monthly premiums on said insurance while in the service and thereafter through reinstatements and payment of premiums the policy remained in effect through May 1, 1926, at which time the policy lapsed for non-payment of premiums, that being the end of the grace period. It is now contended by the plaintiff that on or about the 21 day of January 1926, John T. Shelley because of mental incapacity, by reason of the disease of dementia praecox, became unable to follow continuously any gainful occupation and became within the meaning of the policy "totally and permanently disabled."

IV. The defendant admits in this action that Shelley on September 12, 1931, became totally and permanently disabled by reason of dementia praecox paranoid type, diagnosed by Doctors examining Shelley in the Veterans Administration, but here contend that he was neither permanently nor totally disabled in 1926, when the policy lapsed for non-payment of premiums.

V. Shelley applied in April 1932 to the United States Veterans Administration for payment of disability benefits, which claim was denied by the Board of Veterans Appeals March 24, 1939, and this action was filed, as above stated, March 5, 1955.

VI. Shelley was employed by Booker & Kinnaird, a general insurance agency in Louisville, in the capacity of fire prevention and rate Engineer from 1915 until August 1925, with the exception of the time he was in service in the Army from June 1918 until May 1919.

The evidence indicates that he showed marked ability as such Engineer and became efficient in the use of the Dean Schedule in measuring risks and applicable rates prior to his induction into the Army, but after his return to his former position, after his discharge from the Army, he would appear distracted and apparently unable to concentrate and was unable to use the Dean Schedule as he had prior to his induction.

Miss Willie P. Taylor, a retired member of the partnership of Booker & Kinnaird, testified that after he resumed his work after the War, he "seemed to be in kind of a daze" and that in August 1925, he was released from his employment with Booker & Kinnaird because of his inability to work regularly and render the service his position required.

VII. The members of Shelley's family say that from 1923 on until he was released by Booker & Kinnaird, Shelley was hysterical at times, suspicious of the members of the family and only at intervals manifested any interest in his work. Mrs. Lee J. Ernstberger, widow of Dr. Ernstberger, an uncle of John T. Shelley, testified that in 1922, her husband, then living in New Mexico, on a visit to Louisville became mindful of Shelley's condition and took him back to

New Mexico for a protracted vacation lasting several months and Mrs. Ernstberger said that while Shelley physically appeared to be in good condition, but "after you talked to him a little while you could tell John T. was mentally off, and there would be times he would be perfectly rational and could converse with you and then all of a sudden, he would go off, like that." She testified that his condition gradually became worse.

VIII. The medical testimony consisted of the deposition of Dr. Emory L. Dravo and Dr. Leon Solomon. Dr. Dravo was engaged in the practice of psychiatry and in 1924 he examined Shelley and recognized the mental disturbance which he finally diagnosed as dementia praecox or psychosis, which the Doctor described as a disease easy to detect but which required observation for awhile before it could finally be diagnosed as such. He said that he saw Shelley frequently in 1924, once or twice a week, and that afterwards when Shelley applied to the Veterans Administration for help, he, as an examining physician for the Veterans Administration, examined Shelley. His first examination on behalf of the Veterans Administration was in 1931.

Dr. Dravo states that in his opinion Shelley in the years 1924, 1925 and 1926 continued to work at times, but developed the feeling that people did not want him around and were trying to persecute him, disliked his work and began to jump from one position to another, that is after his connection with Booker & Kinnaird was severed.

IX. In January 1926, Shelley's father died and he received from his mother $500 out of the proceeds of an insurance policy on his father's life and set up a business of his own attempting to sell insurance. In this he was unsuccessful and later worked for Richard Williams, a successful insurance agent, on a salary of $100 per month.

Dr. Leon Solomon testified that in July 1922, he examined Shelley at the request of Shelley's uncle Dr. Ernstberger and Dr. Solomon says he diagnosed Shelley's trouble as the early stages of dementia praecox.

Dr. Ethel H. O'Brien, a psychiatrist, testified that from the medical records, particularly those appearing in Dr. Dravo's deposition, in her opinion about the year 1926, the dementia praecox had advanced to the point that Shelley was unable to work regularly or efficiently at any occupation and that that condition, in her opinion, was incurable, as subsequent events proved.

The defendant introduced as witnesses insurance agents and people connected with insurance companies in Louisville who knew Shelley and who testified that in their casual meetings with him he appeared to be perfectly normal and that they never detected any sign of mental illness on his part until 1931, when it is admitted by all parties here that Shelley became totally and permanently disabled by reason of insanity.

XI. The Court finds that in the year 1922 John T. Shelley became a victim of dementia praecox and that the disease gradually developed from its incipient stages up to his present condition of utter irresponsibility and helplessness.

The Court further finds that about January 1926 and while his policy of war risk insurance was in full force and effect, he became totally and permanently disabled to the extent that he was unable, by reason of that disease, to engage in any gainful occupation.

### Conclusions of Law

#### I

The Court has jurisdiction of the subject matter of this controversy and the parties. Title 38 U.S.C.A. § 445.

#### II

The facts in the case a bar are strikingly like those in the case of Tieben v. United States, 7 Cir., 96 F.2d 907. In that case Tieben entered military service June 15, 1917 and was granted a war risk insurance policy January 2, 1918, was discharged April 10, 1919 and the

policy of insurance expired for non-payment of premiums May 1, 1919.

The insured claimed insurance benefits June 30, 1931 on the ground that the policy matured by reason of dementia praecox which totally and permanently disabled the insured in May 1919.

In 1926 the insured was confined in a Government hospital as insane. His claim was finally denied October 31, 1935, after which litigation was instituted. As in the case at bar, the insured upon his discharge went to his mother's home to live and began suffering from delusions and imagined that his family was trying to poison him; had hysteria and at times was unable to carry on a coherent conversation. Tieben worked for the Ford Motor Company from June 24 to November 20, 1919 and from May 9, 1922 to April 4, 1924. He worked for International Motor Company January 27 to April 6, 1920 and earned in 1922 $1,017.95, in 1923 $1,501.25 and in 1924 $376.50.

The Court, in the Tieben case, determined that Tieben was totally and permanently disabled upon the expiration of his policy for non-payment of premiums May 1, 1919. This disability was determined in the light of the construction of that phrase by the Supreme Court in the case of Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492 that total disability does not mean helplessness or complete disability but includes that which is more than partial permanent disability and means that which is continuing as opposed to that which is temporary and that while separate and distinct periods of temporary disability do not constitute that which is permanent, the mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total, permanent disability.

The Court was of opinion that Tieben's ailment being permanent in its character, totally and permanently disabled Tieben in 1919 and any doubt of this was dispelled by the subsequent progress of the disease. The final determination was that Tieben was afflicted with the disease at the time his policy would have lapsed but for the existence of the disability.

In 1941, the Supreme Court handed down the opinion in Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 639, 85 L.Ed. 945. In that case Berry was severely wounded in the front lines in France in June 1918. He was discharged from the Army January 2, 1919, and his policy lapsed for non-payment of premiums December 1, 1919. Thirteen years later, Berry filed his claim for total and permanent disability benefits. The Court there said—

"And the jury could have found that his efforts to work—all of which sooner or later resulted in failure —were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies. Nor does the fact that he waited thirteen years before bringing suit stand as an insuperable barrier to his recovery. His case was not barred by any statute of limitations."

The Court held in the Berry case that it is not necessary that he be bedridden, wholly helpless or that he should abandon every effort to work in order to maintain his claim for total and permanent disability.

A case from the Sixth Circuit is Plocher v. United States, 87 F.2d 860. The insured, in that case, was a victim of dementia praecox. Upon his discharge from the Army July 30, 1919, he was taken directly to a hospital where he remained for a period of weeks. He was placed under guardianship because of unsoundness of mind from 1919 to some time in 1921, at which latter date, his guardian was discharged and the Veteran was restored to his full rights. Thereafter, he worked as a section hand on the New York Central Railroad for approximately four years, during which time he made application for member-

ship in the company's Mutual Relief Association, in which application he stated he had not suffered any actual infirmity. Although in 1928, the guardianship was renewed because of his mental incapacity, the Veteran continued at work and not until 1932 was any effort made to bring his claim to suit for disability benefits under his policy of insurance. It was urged there, as here, that this long delay in bringing suit, was strong evidence that the Veteran was not totally and permanently disabled on or prior to the date of the lapse of his policy.

The Court there hold that his disease and mentally unsound condition tolled any otherwise applicable statute of limitations.

In the case of Halliday v. United States, 315 U.S. 94, 62 S.Ct. 438, 440, 86 L.Ed. 711, as in the case at bar, the soldier was psychoneurotic and neurasthenic. Much of the testimony in that case was from lay witnesses and the principal medical witness was the family physician, who had known the soldier from infancy, but whose testimony was considered of " 'little probative force' " by the Court of Appeals because of the Doctor's admission that he had not examined the soldier professionally until about 1932. The Doctor testified, however, he had seen petitioner on the streets or in a drugstore at least two or three times a year from 1919 up to the date of his professional examination of him in 1932.

The Court held there that while it is true that total and permanent disability prior to the expiration of the insurance contract must be established, evidence as to petitioner's conduct and condition during the ensuing years is certainly relevant, and that it is well known that one's state of mind is not always discernable in immediate events and appearances and that—

"its measurement must often await a slow unfolding."

The Court said—

"This difficulty of diagnosis and the essential charity of ordinary men may frequently combine to delay the frank recognition of a diseased mind."

The case of Berry v. United States, supra, apparently marked a turning in the trend of decisions on mental diseases. In Hoisington v. United States, 2 Cir., 127 F.2d 476, 477, the soldier's work record for a period of eleven years was relied upon as conclusive proof that he was neither totally nor permanently disabled. In the Hoisington case, the Court said—

"Some years ago [this was in 1942] this court would quite likely have so ruled. * * * But recent decisions of the Supreme Court indicate very clearly that the issue of total permanent disability should be left for decision by the jury under proper instructions, rather than determined by the judges."

In the case of Knapp v. United States, 7 Cir., 110 F.2d 420, the claim was that the soldier became totally disabled prior to January 15, 1921. The complaint in that action was not filed until June 6, 1936. The disabling factor in that case was dementia praecox. Recovery was allowed.

Other cases that have influenced the Court in this case are—United States v. Spalding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Sutphin v. United States, D.C., 15 F.Supp. 660, a case from the Eastern District of Kentucky; United States v. Lyle, 6 Cir., 54 F.2d 357; Thatenhorst v. United States, 10 Cir., 119 F.2d 567, 571.

The latter case involved an appeal from a judgment of a case tried to the Court without a jury. The Court said—

"It must be remembered that lawsuits are not tried by the square and compass, but by the innate sense of justice of the judge, whose duty it is to try the facts, and from those facts arrive at a just and impartial result."

Such innate sense of justice as this Court has as to the facts involved in this record, dictates that this soldier is

entitled to the relief he seeks in his petition.

A judgment awarding the disability benefits of the policy will be tendered by counsel for plaintiff.