Margaret CARTWRIGHT, Administrator to Collect of the Estate of Wayne Kiester, Deceased, Plaintiff-Appellant,

v.

TRAYLOR BROS., INC., Defendant-Appellee.

No. 13135.

United States Court of Appeals
Seventh Circuit.

March 30, 1961.

John L. Carroll, Edwin W. Johnson, Evansville, Ind., Johnson & Carroll, Evansville, Ind., of counsel, for appellant.

Herman L. McCray, Evansville, Ind., McCray & Clark, Evansville, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and MAJOR and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff brought this suit to recover damages for the alleged wrongful death of Wayne Kiester. At the conclusion of the plaintiff's case, the defendant moved for a directed verdict in its favor. The motion was granted, and this appeal followed.

The instruction to the jury read in part:

"Members of the jury, the plaintiff in this case sued the defendant to recover damages which plaintiff claims to be due for the reason that defendant while in possession of or should have been in possession of the Pigeon Creek Pumping Station on September 4, 1957, and that defendant while in such station was negligent in certain acts of commission or omission.

"There is not in this case legal evidence which supports the action or which will support any verdict

for the plaintiff and against the defendant."

The facts are largely undisputed. Defendant had a contract with the City of Evansville, Indiana, to construct a pumping station to handle raw sewage. Mr. Kiester was the resident engineer for the consulting engineers on the project. At the time of the accident out of which this suit arose, about 97% of the entire job had been completed, and about 83% of the ventilating system had been completed.

On September 4, 1957, Mr. Kiester had met with Louis Duncan, the City Sewer Superintendent; Jack Buttram, an employee of Knight Electric Company; and John Zimmer, an employee of defendant; to replace steel tapes on the float controls which regulated the speed of the pump motors. There was a ventilating system to exhaust sewer gasses which might collect in the bottom of the wet well of the pumping station. There was evidence to show that at the time of the accident, the ventilating system was not functioning because the wire screen at the discharge end was clogged with dirt so that sewer gas could not be expelled.

Mr. Kiester, while in the station, looked down and saw that Mr. Duncan was lying on the floor of the wet well. He ran down the stairway into the well and collapsed while picking up Mr. Duncan. It was 30 to 45 minutes before Mr. Kiester was removed from the well. He died the same day as a result of sewer gas poisoning.

The complaint here charged defendant with breach of its duty to use due care toward Mr. Kiester. Plaintiff's evidence showed that the work had not been completed, had not been formally accepted by the City, had not been paid for, and that defendant's employee, Mr. Zimmer, was on the premises at the time of the accident. The evidence also indicated that the station was being used by the City, and that the City for about 2½ months, had kept the station locked. During that period, defendant gained access to the station by having a City employee

unlock the door. Thus defendant argues that the uncontroverted evidence of Mr. Zimmer established that the City was using the station, that the City kept it locked and that defendant could not have had possession and control of the station. It is defendant's position that when defendant relinquished possession and control to the City, the City became an intervening agency and terminated defendant's liability to any third persons injured on the premises.

There was further testimony, however, that Mr. Zimmer himself had been admitted to the premises from six to twelve times between January, 1957, and the time of the accident. There was no evidence to show that defendant's employees had ever been refused admittance to work on the station.

■ In deciding defendant's motion for a directed verdict, the Court must consider the evidence in the light most favorable to the plaintiff. Tieben v. United States, 7 Cir., 1938, 96 F.2d 907; Cole v. American Bridge Co., 7 Cir., 1945, 152 F.2d 157, 159.

■ On the evidence here adduced, it appears to us, for example, that the jury might well have found, as a fact, that the City's exercise of its right to possession as owner by locking the premises did not defeat the defendant's right of access and possession to complete the work on the station which had not yet been formally accepted by the City. Under those circumstances, the defendant would not have been relieved of its responsibility to decedent as a person to whom defendant owed a duty of precaution under the terms of its contract with the City (which was in evidence) or under the general law.

■ An examination of the record in this case clearly reveals that the issue of defendant's liability should have been submitted to the jury. We have said that in "reviewing the ruling of a trial court on a motion for a directed verdict * *, we must determine whether the evidence justifies the submission of the case to the jury. Such a motion should be denied

**198**

where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions. Valdes v. Karoll's Inc., 7 Cir., 1960, 277 F.2d 637, 638, and cases cited therein." Threatt v. United States Steel Corporation, 7 Cir., 1960, 283 F.2d 411, 413.

Applying the foregoing standard to the evidence introduced before the jury, we hold that the trial court erred in granting defendant's motion for a directed verdict in its favor at the conclusion of the plaintiff's case.

The case is therefore reversed and remanded for a new trial.

Reversed and remanded.