Akiko **BUXHOEVEDEN**, Administratrix
of the Estate of Theodore V. Buxhoe-
veden, Deceased, et al., Plaintiffs-Ap-
pellants,

v.

**B & P MOTOR EXPRESS, INC.** and
Chester T. Belback, Defendants-
Appellees.

Nos. 17625, 17626.

United States Court of Appeals,
Seventh Circuit.

Dec. 7, 1970.

Gerald Kamm, Bruce H. Stewart, Dor-
an, Manion, Boynton & Kamm, South
Bend, Ind., for appellants.

Roland Obenchain, Jr., Thomas F.
Lewis, Jr., South Bend, Ind., for appel-
lees.

Before FAIRCHILD and CUM-
MINGS, Circuit Judges, and MORGAN,
District Judge.[1]

CUMMINGS, Circuit Judge.

This diversity action is for the wrong-
ful deaths of plaintiffs' decedents. At
the close of plaintiffs' case, the district
court directed a verdict for defendants
on the ground that plaintiffs had not
submitted sufficient evidence to justify
a jury inference that the deaths were
caused by defendants' tractor and semi-
trailer. We hold that the jury could rea-
sonably have inferred that plaintiffs'
decedents died as a result of injuries
sustained when their overturned vehicle
was struck by defendants' vehicle.

At 3:00 a. m. on December 22, 1965,
Theodore Buxhoeveden started driving
his Citroen station wagon from Chicago
to New York. He was accompanied by
Laureano Medina and his wife, Conchi-
ta. When they left Chicago, Buxhoeve-
den and Mrs. Medina were seated in the
front of the Citroen with their seat belts
fastened. Medina slept on the rear seat
which did not have a seat belt.

Three miles before the scene of the
accident, they stopped at a service sta-
tion on the Indiana Tollway to obtain
gasoline, grease, and oil for the car and
to have coffee. After this 30-minute
break, they resumed the same seats, but
the testimony does not show whether the
front seat belts were refastened. Medi-
na again slept in the rear seat until
awakened by the noise attendant upon
the tilting and overturning of the sta-
tion wagon. The evidence does not show
what caused this first accident. The
impact threw Medina onto the highway
where he lapsed into unconsciousness
three times before being hospitalized for

1. Judge Morgan of the United States District Court for the Southern District of Illinois is
sitting by designation.

treatment of a forehead gash, torn ear and hand bruises.

The evidence indicated that the automobile skidded sideways on the pavement before leaving the road. The car then skidded approximately 18 feet along a five foot bank located some 12 feet from the highway. Apparently the Citroen then overturned and slid, upside down, back to the turnpike, where it came to rest straddling the center line dividing the two eastbound lanes.

About 7:00 a. m. the same morning, Leon Dodson was driving a semi-trailer truck west on the Tollway when he saw a flashing light and sparks on the pavement on the other side of the highway. Upon stopping, he noticed the Citroen upside down in the middle of the two eastbound lanes. He saw Medina sitting beside the car in a state of shock and also noticed that Mrs. Medina's legs were sticking out of the car. She was rapidly speaking a foreign tongue in a strong voice and was wearing a wide skirt. Dodson was unable to extricate her. When attempting to remove her from the car, he observed only her legs, the seat and the hanging black net of the bottom of the seat. However, he did not really look into the car but was just trying to pull her out.

When Dodson saw defendants' truck approaching from the west, he attempted to stop it by running down the middle of the road, waving his arms. When it appeared that the truck was not slowing down, Dodson dodged to the left, 10 feet off the road, and the truck hit the Citroen, causing it to explode and burst into flames, with its parts being scattered a hundred feet down the road. Until hit by the defendants' truck, the Citroen was not on fire. The truck barely missed Medina, who remained in the same roadside position after this second accident. After the collision, defendants' truck jackknifed into the right-hand side ditch after proceeding down the roadway for a couple of hundred feet.

Dodson then discovered another man east of the former position of the Ci-

troen. Although Dodson had previously passed that position, he had not seen this victim before. He was smaller than Medina and later proved to be Buxhoeveden. His clothing was on fire. Dodson smothered it with a blanket and removed the injured man's loose clothing. Buxhoeveden was then breathing and moaning, but died of a skull fracture within seconds. After the second accident, Mrs. Medina was found 90 feet east of the Citroen in the median strip, wearing only her underclothing. In a good voice, she said, "Oh, my God" two or three times. Dodson did not hear her speak again. She died of severe head injuries a few hours later in a nearby hospital.

In granting the defendants' motion for a directed verdict, the district judge told the jury there was no evidence that Buxhoeveden was in the Citroen when it was hit by defendants' truck, and no evidence that his fatal injuries were incurred by that impact. The court also told the jury that there was no testimony as to what injuries were inflicted upon Mrs. Medina by the truck.

The issue before us is whether there was evidence from which a reasonable man could find more probable than not that the second accident caused the fatal injuries rather than the first. See Prosser, Law of Torts, p. 245 (1964). We hold there was adequate evidence to permit the jury to conclude that Buxhoeveden remained in the Citroen after the first impact, and that the fatal injuries resulted from the collision between the truck and the car.

The jury could infer that Mrs. Medina and Buxhoeveden refastened their seat belts and were trapped in the wreck while Mr. Medina, who had no seat belt, was thrown from the car. This conclusion is supported by Dodson's failure to see Buxhoeveden until after the second accident when he was found some distance east of the prior position of the Citroen with his clothing smoldering.

Relying chiefly on Montgomery v. Polk Milk Co., 118 Ind.App. 433, 79 N.

E.2d 108 (1948), Lane v. Hampton, 197 Va. 46, 87 S.E.2d 803 (1955), and Eckley v. Seese, 382 Pa. 425, 115 A.2d 227 (1955), defendants urge that the trial court correctly concluded that the jury could not reasonably infer that the injury was caused by the second collision rather than the first accident. There, however, the evidence disclosed that the first accidents were of sufficient magnitude themselves to have been as likely, if not likelier, to cause the injuries complained of. In this case, on the other hand, the evidence supports the conclusion that the initial accident might not have been of such a character as to give rise to a great likelihood of fatal skull fractures to the occupants of the Citroen.

Although the first accident caused injury at least to Mr. Medina, the record does not indicate that his injuries were particularly grave or otherwise suggest more serious inflictions upon the other passengers. Mrs. Medina, moreover, was conscious and speaking strongly after that occurrence. Although the first accident might have caused fatal injuries such as those received by Mrs. Medina and Buxhoeveden, we are unpersuaded that it would probably have done so.

It is clear that the second collision demolished the car and hurled Mrs. Medina and possibly Buxhoeveden from the car with tremendous force. In contradistinction to the first, the second impact was so severe as to render fatal injuries a virtual certainty. Thus Mrs. Medina's condition appears to have been much worse thereafter. Her clothing had been torn off and her body had been hurled 90 feet by the second accident. The change in her speech pattern also suggests that her fatal head injuries occurred after the Citroen was struck by defendants' truck. The jury could infer too that Buxhoeveden died as a result of being thrown from the Citroen after it was hit by the defendants' truck. His being propelled from the Citroen would justify a finding that his mortal skull fracture was caused by the truck's collision with his station wagon, particularly since it is inferable that he was still wearing a seat belt at the time of the initial overturning. He was found lying in the same direction as Mrs. Medina and with his clothing on fire. The Citroen had not been burning until the second accident. Dodson had passed Buxhoeveden's position but did not see him before the second accident. In our opinion, these facts presented a jury question as to whether the decedents' fatal injuries more probably occurred from the second accident than the first.

As we said in Cartwright v. Traylor Bros., Inc., 288 F.2d 196, 198 (7th Cir. 1961), a motion for a directed verdict should be denied "where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing the motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." That it may also be reasonable to conclude that defendants did not cause the injuries to plaintiffs' decedents does not warrant withdrawal of the case from the jury. Zink v. Radewald, 369 F.2d 253, 256 (7th Cir. 1966). This case should not have been taken from the jury merely because defendants' negligence may have been only one of the proximate causes of Mrs. Medina's and Buxhoeveden's deaths. Cf. Krohn v. Shidler, 140 Ind.App. 175, 221 N.E.2d 817, 823 (1966). Applying the *Cartwright* standard, we hold that the trial court erred in granting defendants' motion for a directed verdict.

Reversed and remanded for a new trial.

MORGAN, District Judge (dissenting).

I must respectfully dissent. It appears to me that, because the first accident was of a magnitude which might have caused death, submission of this case to a jury on the evidence here will invite a greater degree of speculation and conjecture than is permitted by the

applicable law of Indiana. This, I think, we have no right to do, as the trial judge recognized, even though we might prefer to stretch so-called "reasonable inferences" into the area of speculation.

There is simply no direct or circumstantial evidence indicating which trauma caused the deaths. That the second crash, being the only one in which defendants were involved, was a proximate cause of the death is an essential proposition on which plaintiffs had the burden of proof. Even if it be inferred that both decedents were in the Citroen with seat belts fastened when it was struck by defendants' vehicle, there is no evidence that they were not already mortally wounded. That the second crash was more violent and spectacular than the first, and even that it almost certainly would have caused death to any occupant of the Citroen, is immaterial, unless it may reasonably be inferred from evidence that such occupants would not have died from injuries received in the first crash. That Mr. Medina, who was thrown from the vehicle at some unknown point during the first accident, and not involved in the second, did not die from his injuries, certainly gives rise to no inference whatsoever that others who were not thrown out would have survived it. This is pure speculation.

The fact recognized by the majority opinion that decedents "might have" survived their injuries received in the first crash appears to me to show the unavoidable speculation on that point without benefit of inference from the record.

I do not believe it is necessary that a judge or reviewing court be "persuaded" that the injuries in the first accident *were fatal,* or that it is a question of which type of accident more probably would produce fatal injuries; it is the legal prerequisite to recovery that plaintiffs produce some evidence that the first accident injuries *were not* fatal before they can impose liability on the defendants here for such fatalities. This they did not do.

With deep respect for the so-called *Cartwright* standard on directed verdicts (288 F.2d at 198) and for my judicial superiors on this panel, I think the well developed law of Indiana on inferences in relation to burden of proof required a directed verdict for defendants here. See Prudential Insurance Company of America v. Van Wey, 223 Ind. 198, 59 N.E.2d 721 (1945); Orey v. Mutual Life, 215 Ind. 305, 19 N.E.2d 547 (1939); Montgomery v. Polk Milk Company, 118 Ind.App. 433, 79 N.E.2d 108 (1948); Moorman Mfg. Co. v. Barker, 110 Ind.App. 648, 40 N.E.2d 348 (1942); New York Central v. Green, 105 Ind. App. 488, 15 N.E.2d 748 (1938). Krohn v. Shidler, 140 Ind.App. 175, 221 N.E.2d 817 (1966), simply is not authority to the contrary. Accordingly, I would affirm.