KOKOMO LIFE AND ACCIDENT INSURANCE COMPANY *v.*
WOLFORD.

[No. 13,328.   Filed July 6, 1929.   Rehearing denied October 2, 1929.
Transfer denied December 4, 1929.]

*McClure & Elliott* and *Thomas M. Ryan*, for appellant.
*Fred J. Byers* and *William Robinson*, for appellee.

McMahan, C. J.—This is an action by Ethel Wolford against the Kokomo Life and Accident Insurance Company to recover on a policy of insurance insuring Arthur Wolford, husband of the plaintiff, against accident and sickness. The complaint alleged that the insured met his death by accident in an automobile. The policy covered death resulting "directly and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means," and specifically provided that if the insured met "with any personal bodily injury which is effected directly and independently of all other causes through external, violent, and purely accidental means," and which resulted in loss of life, the insurance company would pay to his wife, Ethel Wolford, $500.

A trial by jury resulted in a verdict and judgment in favor of plaintiff for $500. The error assigned is the overruling of appellant's motion for a new trial, under which appellant contends that the verdict is not sustained by sufficient evidence, and error in giving and refusing to give certain instructions.

In support of the first contention, appellant insists the evidence does not show that the death of the insured was caused by an accidental bodily injury "effected directly and independently of all other causes." It is difficult to

state with precision the grounds upon which appellant bases its first contention. As we understand the same, it seems to be that the insured's death was not caused by an accidental injury within the meaning of the policy and that the bodily injury suffered by him did not "directly and independently of all other causes" effect his death.

Appellant and appellee disagree in their recital of the evidence and in their final analysis of the facts as disclosed by the evidence. As an appellate tribunal, we can look only to the evidence tending to support the verdict, and where reasonable men might draw different inferences, one supporting the verdict and the other to the contrary, it is our duty to adopt the inference which supports the verdict. The facts directly and inferentially proved to sustain the verdict are, in substance, as follows: The insured was 49 years old at the time of his death; he was, and for a number of years had been, a skimmer in the casting department of the Pittsburgh Plate Glass Company at Kokomo; on December 30, 1925, he began his work at 6 o'clock p. m., at which time he complained of not feeling well; he worked about an hour when he quit work, saying he was going home; W. M. Thomas testified that he was sitting in his house reading a paper when he heard a crash and went to the door and saw an automobile up against a tree at the corner of his porch; that he spoke to the man in the car and got only a mumble out of him; it was dark and he could not see who it was; the man in the car was leaning over the steering wheel with his head down; the crank of the machine had hit the tree and cut a gash in it an inch to an inch and a half deep; did not think he could handle the man alone, so he called the police, who came in about 25 minutes and put the insured in the police car and took him away; after the police left, he looked at the identification card in the car and dis-

covered it was the insured whom he had known for many years; the decedent's car was backed away from the tree but could not be run; the radius rod was bent so the car had to be pulled in; the tree was six to eight feet from the sidewalk; the witness saw no place in the street where there had been an accident and heard nothing until he heard the crash in question.

Virgil Elliott was the police officer who responded to the call of Thomas. He testified that he found the insured sitting in the car bent over the wheel, with his hat on; the only remark he made was that he was sick; put him in the police car and took him to police station; he died before they reached the station; did not see any injury, blood or bruise about his body. Another policeman testified to about the same facts.

Dr. Morrison was the coroner. He was called and investigated the cause of the death, and testified that the direct cause of the death was traumatic shock, with chronic myocarditis and arteriosclerosis as an indirect and contributing cause; that traumatic shock is a physical condition; that the case in question was the result of a blow or violence; that he thought the insured had hit a very sensitive area in his abdomen; that he believed this shock was sufficient to have caused the death regardless of any other condition, and that it was the cause of the death.

It is not debatable but that there was sufficient evidence to warrant the jury in finding that the insured met with an accidental injury. The real question is: Was the evidence sufficient to sustain a finding that the injury so received was the only active, efficient and proximate cause of his death? The cause of his death was a question of fact for the jury, and the finding of the jury must be sustained if there is any legitimate evidence to support it, and we hold the evidence is sufficient for that purpose, and that the verdict is not contrary to law.

The next question relates to the giving and the refusing to give certain instructions.

Instruction 9, of which complaint is made, defines a direct and proximate cause as the active and efficient cause that sets in motion a train of events which brings about a result without the intervention of any force, started and working actively and efficiently from a new and independent source, and then informs the jury that, if it found the alleged sickness of the insured was the proximate cause of his death and that if there was no other active and efficient cause intervening, the plaintiff had failed to make out her case and would not be entitled to recovery; but that, if the jury found the alleged accident was the proximate cause of his death and that there was no other active and efficient cause intervening, she had established that the death of the insured resulted directly and independently of all other causes and was entitled to recover. The other instructions given of which appellant complains are along the same line.

The instructions tendered by appellant, and which were refused, were to the effect that, if the insured was suffering from arteriosclerosis and myocarditis and that his death resulted from traumatic shock caused by external, violent and accidental means jointly and in conjunction with such disease, she could not recover. One of such proffered instructions was to the effect that if his bodily infirmities were aggravated by the accident and that the accidental injury and his infirmities contributed to his death, there could be no recovery.

In *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 73 N. E. 824, the liability was limited to "bodily injuries effected through external, violent and purely accidental causes—such injuries as shall, solely and independently of all other causes, necessarily result in death within ninety days." In discussing the policy there involved, the court said: "The causes referred to

in this class of instruments relate to proximate, and not remote, causes. . . . When two or more causes contribute to an injury, where there is doubt, or the facts [are] of a character that equally prudent persons would draw different conclusions therefrom, in such cases, which of the contributing causes is the efficient, dominant, proximate cause, is a question to be submitted to the jury." And, on page 61, the court said: "And it makes no difference whether it (the jury) found that the cause closest [to] the death was hemorrhage of the brain, or an organized blood clot within the walls of the cerebral artery. It had the right to find that the accidental fall was the cause that put his life in jeopardy, because it incited the fatal energy of the tumor, which was at least dormant, and would have remained so for an indefinite period, and, perhaps, until death from some other cause would have supervened. The tumor had impaired the resisting strength of the artery, but had not effected immediate danger to life. It was proper under the evidence for the jury to view the impairment as a condition, and not as a cause, and to find that the fall was the originating, efficient, direct and proximate cause of death; that is, that the fall set in motion a force that progressed upon present existing conditions in natural, usual sequence to effect the fatal result."

The contention in that case was that an artery had been impaired by a tumor; that the insured's death was caused partly by the accident and partly from the diseased condition of the artery. The court there held that the causes mentioned in the policy were the proximate and not the remote causes. So, in the instant case, the causes referred to in the policy were the proximate or direct causes and not the remote cause. On the authority of *Continental Casualty Co.* v. *Lloyd*, *supra*, we hold the court did not err in giving or in

refusing to give the instructions of which complaint is made.

Affirmed.