FIDELITY HEALTH AND ACCIDENT COMPANY v. HOLBROOK

[No. 13,505. Filed December 4, 1929. Rehearing denied February 25, 1930. Transfer denied April 25, 1933.]

458

*Long & Yarlott, Frazer & Headley* and *Stevens & Stevens,* for appellant.

*Brubaker & Rockhill,* for appellee.

REMY, C. J.—Action by appellee to recover on a policy of accident insurance issued by appellant, hereinafter referred to as the company, to husband of appellee, and in which she was named as beneficiary. By the terms of the policy, the company stipulated that in consideration of representations and agreements contained in the application and the payment of a certain premium, and subject to all the limitations and conditions set forth in the policy, it insured "Thomas E. Holbrook, by occupation chief operator, office and superintendent only," against loss of life, effected directly and independently of all

other causes, through external, violent and accidental means; the indemnity for loss of life to be $5,000. A further stipulation of the policy is that it "contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates. In the event that the insured is injured . . . after having changed his occupation to one classified as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified . . . , in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate limits fixed by the company for such more hazardous occupation."

Appellee's complaint was in the usual form in such cases. In addition to denial, appellant filed a second paragraph of answer, in which it set up that at the time the policy sued on was issued the company had published in pamphlet form its classification of risks and premium rates; that there were "ten classes for insurance purposes, classified according to the risk and hazard of such occupation. . . . said classes being classified as AA, A, B, C, D, E, F, X, XX and XXX;" that according to the classification, Holbrook, whose duties were "chief operator, office and superintending only" was entitled to, and was given the premium rate of $40.00 annually; that the policy in suit was in class A according to the company's classification; that according to the classification of the company the occupation of electric lineman or trouble-man, a more hazardous occupation, was classified as class X, in which the annual premium rate of $40.00 would purchase but $100 indemnity for accidental death; that at the time of the accident which resulted in the death of Holbrook, he was doing an act pertaining to the more hazardous occupation of electric lineman, and that under

the terms of the policy his recovery should be limited to $100.

A reply in denial to the second paragraph of answer closed the issues, and a trial resulted in a verdict and judgment for appellee, for $5,000 and interest.

It appears from the evidence that, at the time in question, the Interstate Public Service Company was furnishing electric energy to users scattered over a large section of the country lying in the eastern part of Kosciusko county, including the town of Leesburg; that something had gone wrong which affected the distribution over a wide area; it was nighttime, and responsibility for the service rested primarily upon Holbrook who was chief operator and superintendent of the service company; the cause of the trouble was not known. Holbrook called Walter Bolinger, an electric lineman in the employ of the company, and the two proceeded to locate the trouble. They began their investigation at Leesburg where was located the company's switch tower and other electrical equipment. Holbrook first sent the lineman up a certain pole which stood some distance north of the tower; no defect having been found there, they went to the switch tower, a complicated structure thirty feet high, with transformers, switches and other equipment. This time Holbrook went up, Bolinger, standing upon the ground, held a flashlight by means of which he caused a light to be thrown upon Holbrook who examined two of the three fuses, and pronounced each all right. He then went to the third fuse, and immediately announced that he had found the seat of the trouble. Just here there is a slight difference in the testimony. Bolinger testified that Holbrook reached toward the fuse, but witness did not see him touch it. Two other witnesses testified as to what took place, one of whom stated that Holbrook took hold of the fuse; the testimony of the other being in all things the same as that of Bolinger. Within a few

seconds there was a flash of light near Holbrook and he fell to the ground, having been instantly killed by a current of electricity. To show that Holbrook did not go upon the tower to replace a burned-out fuse, but to make an investigation, plaintiff, appellee here, introduced evidence that Holbrook did not take with him, when he went upon the tower, rubber gloves, wooden fuse tongs or a new fuse, as was the custom when an operator was to make a replacement. The general superintendent of the service company, testifying as a witness, stated that Holbrook "was responsible for the operation of the equipment for the maintenance of the service; if there was an interruption, it was his duty to take proper steps to reinstate the service; that he was not required to perform physical labor, though he might do so in the execution of orders, in emergencies and in showing other men how work was to be done; that the company expects any man to do the work necessary to be done at the time it happens." The company's manager for the North Webster electric plant, testifying as a witness, stated that "We use most any man for trouble when there is trouble."

At the close of the evidence, on the trial of the cause, the company tendered the following instruction: "If you find from a fair preponderance of the evidence that at the time Holbrook met his death he was doing an act or thing pertaining to the occupation of linemen or troubleman, as classified by defendant company, then your verdict should be for plaintiff in the sum of $100 only." The court refused to give the instruction, and appellant's exception to the ruling raised a question which is the most important presented by this appeal. A solution will require a construction of the policy—particularly the expression, "while doing any act or thing pertaining to any occupation so classified as more hazardous."

The policy, which covers fourteen type-written pages

of the record, not including "attached papers" made a part thereof by reference, is unduly long, and is a ██ good example of what ought not be issued by an insurance company which would avoid litigation. By a clause on the first page, the policy purports to insure Holbrook, "occupation chief operator, office and superintendent only," against accident; there is at this point no qualification. Seven pages further on, under a section of the policy designated as "Standard Provisions," is found the clause in question, which clause is found on page 459 of this opinion. Must the clause be construed to mean that the indemnity to be paid will be diminished, if the act done by the insured is an act, including any act pertaining to his own occupation, which may also pertain to another classed by the company as more hazardous? Or does it mean any act pertaining to another occupation classed by the company as more hazardous, but in no way pertaining to his own occupation? Clearly, the language is ambiguous, and the latter construction, which is more favorable to the insured, must prevail. As was said by the North Carolina Supreme Court, when it had under consideration the exact question of construction in an insurance case, except that the insured's occupation was stated as that of foreman and supervision, having overseeing duties only: "Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used, and the only admissible one. Under the other construction the company would be saying to the insured: 'We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to a proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance.'" *Smith* v. *Massachusetts Bonding Co.* (1920), 179 N. C. 489, 102 S .E. 887. See, also, *King* v. *Standard Acc. Ins. Co.* (1923), (Mo. App.), 248 S. W. 984; *Gotfredson* v. *German, etc., Co.* (1914), (C. C. A.),

218 Fed. 582, L. R. A. 1915D 313; *National Acc. Soc.* v. *Taylor* (1891), 42 Ill. App. 97; *Elkins* v. *Aetna Life Ins. Co.* (1928), (D. C.), 26 Fed. (2d) 277. Our attention has been called to the case of *Ebeling* v. *Banker's Cas. Co.* (1921), 61 Mont. 58, 201 Pac. 284, 22 A. L. R. 777, wherein an insurance contract, in all material respects the same as in the case at bar, was given the narrower construction contended for by appellant herein. In our view, the conclusion reached by the court, under the facts in that case, may have been correct, but the reasoning in reference to the limiting clause as it appeared in the policy, does not meet our approval, and is not in accord with the weight of authority.

By instruction No. 7, given by the court on its own motion, and of which complaint is made, the members of the jury were told that if they found that the occupation of insured was as stated in the policy, an occasional act performed by insured in an emergency, although pertaining to an occupation classified as more hazardous, would not as a matter of law defeat a recovery or reduce the amount thereof. The instruction is incomplete and erroneous, for the reason that it did not limit the acts of emergency to those which were a part of insured's duties as chief operator and superintendent. However, the instruction, which is not mandatory in form, when read in connection with other instructions given by the court, and which correctly state the law applicable to the facts, could not have harmed appellant.

The instructions given when taken as a whole correctly state the law.

It was not error, on the trial, to exclude the testimony of the company's agent who wrote the policy, as to conversations between the agent and insured, which took place immediately prior and which led to the execution and issuance of the policy. No

one is contending that there was fraud or mistake. The instrument as executed is presumed to contain all the terms of agreement for insurance by which the parties intended to be bound. *Cass* v. *Lord* (1920), 236 Mass. 430, 128 N. E. 716.

Error is predicated upon the action of the court in admitting the testimony of appellee, who appeared as a witness and testified that she was the mother of three children. Substantially the same question was presented to this court in *Terre Haute, etc., Trac. Co.* v. *Frischman* (1914), 57 Ind. App. 452, 107 N. E. 296, where it was held that the evidence was properly admitted to show the history and environment of the witness. In our view, the practice of admitting such testimony in cases of this character is not to be commended; nevertheless we hold that, under the issues and facts as shown by the record in this case, appellant was not harmed by the evidence.

There is no reversible error.

Affirmed.

### ON PETITION FOR REHEARING.

REMY, C. J.—In its petition for rehearing, the suggestion is made that there is no basis for the contention that the act in which Holbrook was engaged at the time he met his death was included within his occupation as stated in the policy, that is, "Chief operator, office and superintendent only," it being argued that he was performing no act of superintendence; that "superintending means overseeing and directing workmen;" that "Holbrook was not superintending anybody or directing anybody." The definition urged is too narrow. In this industrial era, when machinery is in such general use, an employee may be the superintendent of machinery and equipment as well as men; he may direct forces and power as well as brain and brawn.

If appellant had desired that the insuring clause of its policy be given the construction now contended for, there need have been no doubt as to its meaning. It would have been a simple matter to have added after the words "Chief operator, office and superintendent only," the words, "not climbing poles or structures or doing manual work of any kind."

Rehearing denied.