## PRUDENTIAL INSURANCE COMPANY OF AMERICA v. VAN WEY, ET AL.

[No. 28,054. Filed March 12, 1945.]

*Norman F. Arterburn,* of Vincennes, and *William D. Curll,* of Petersburg, for appellant.

*Joseph W. Kimmell,* of Vincennes, and *Carl M. Gray,* of Petersburg, for appellees.

YOUNG, J.—Appellees were the beneficiaries named in a policy of insurance issued to one Edith Van Wey by appellant, insuring her life in the sum of $1,000.00 with double indemnity in the event of death by accidental means. The insured died on January 18, 1942. The appellant paid the principal amount of the policy but declined to pay the double indemnity on the theory that the insured's death was not through accidental means but was due directly or indirectly to bodily infirmity and disease.

Suit was filed upon the double indemnity provision of the policy. At the conclusion of plaintiffs' evidence defendant asked for a directed verdict. Appellees joined in the request and thereupon the jury was discharged and solely upon the evidence of plaintiffs the court found for the plaintiffs and entered judgment against the defendant for the additional amount plus interest. This appeal followed and the only question presented is the sufficiency of the evidence to bring the case within the double indemnity provision of the policy sued on.

There is no material conflict in the evidence. The insured was 62 years old at the time of her death. For eight or 10 years prior thereto she had suffered from chronic nephritis, hypertension and coronary

sclerosis which at times caused headaches and dizziness. She was confined to her bed intermittently and at other times she was up and about taking care of her home and doing the cooking for herself and her daughter who is a school teacher.

About two weeks prior to her death, her condition became acute and she was confined to her bed and her family doctor was called. He testified without contradiction that during the week prior to her fall she suffered dizzy spells and was very weak and tottered when she attempted to walk and that he instructed her to stay in bed. The floor in the bathroom in the Van Wey home was a step higher than the bedroom in which the insured slept. About six o'clock on the morning of January 15, 1942, she arose from her bed and went into the bathroom. Her daughter, who occupied another bedroom in the house, heard, but did not see, her mother fall. Her mother called and the daughter went to her and found her lying on the floor of the bathroom near the step. There is no evidence that she said or indicated that she had slipped or stumbled. She had fallen and fractured her hip. The daughter picked her up at the step and put her back in bed. The fracture was reduced and her condition seemed satisfactory for about 24 hours. Then she developed hydrostatic pneumonia from which she died on January 18, 1942. Hydrostatic pneumonia frequently occurs in elderly people when they are compelled to lie upon their backs for a considerable length of time. The lungs congest and are gradually filled with fluid and breathing becomes impossible. Her doctors testified that her death could and might have been entirely independent of and uncontributed to by her physical illness and that except for the broken hip and the pneumonia which followed

as a natural result of the necessary treatment of the broken hip, she might have lived for several years.

The double indemnity clause of the insurance policy sued on, so far as material in this appeal, reads as follows:

> "The amount of accidental death benefit . . . shall be payable in addition to the face amount of insurance . . . upon due proof that the death of the insured occurred . . . , as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, . . . provided, however, that no Accidental Death Benefit shall be payable if the death of the insured resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form."

Appellant contends that there was no evidence to establish that insured's death occurred as a result of bodily injuries effected solely through accidental means and that the only reasonable inference from the evidence is that her death resulted directly or indirectly from bodily infirmity and disease.

Admittedly insured died from hydrostatic pneumonia but this disease was the natural result of necessary treatment of the broken hip which in turn was admittedly the result of a fall. The fall set in motion the events which culminated in her death. The fall, therefore, was the proximate cause of the insured's death and in determining liability in a case of this kind it is the proximate cause which is controlling. *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 59, 60, 73 N. E. 824; *Chicago & Eastern Illinois Ry. Co.* v. *Whipking* (1930), 96 Ind. App. 167, 173, 174, 170 N. E. 548; *Kokomo Life, etc., Ins. Co.* v. *Wolford* (1929), 90 Ind. App. 395, 167 N. E. 156.

The question then remains as to whether the fall was effected through accidental. means or whether the fall resulted directly or indirectly from bodily infirmity or disease. There was absolutely no evidence that the insured slipped or stumbled. There was uncontradicted evidence that for eight or 10 years she had been confined to her bed intermittently by reason of disease which caused weakness and dizziness. It was the uncontradicted evidence that for a week or more before her fall she had been confined to her bed and was very weak physically and had dizzy spells and tottered when she attempted to walk, but injuries received from a fall caused by weakness or physical disability may not properly be said to have been effected solely through accidental means. *Husbands* v. *Indiana, etc., Accident Assn.* (1921), 194 Ind. 586, 133 N. E. 130; *Schmid* v. *Indiana Travelers, etc.* (1908), 42 Ind. App. 483, 85 N. E. 1032.

The burden of proof was upon the plaintiffs to produce evidence bringing the case within the double indemnity clause of the policy of insurance sued on. *Newman* v. *Railway Officials and Employees' Accident Association* (1895), 15 Ind. App. 29, 32, 42 N. E. 650; *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 307, 19 N. E. (2d) 547; *Police & Firemen's Ins. Assn.* v. *Blunk* (1939), 107 Ind. App. 279, 285, 20 N. E. (2d) 660. The burden was upon them to prove that the insured's death occurred as a result of bodily injuries effected solely through accidental means.

While ultimate facts may be established by direct or circumstantial evidence and by inferences properly drawn from such evidence yet neither courts nor juries have any right to presume any fact in issue which they are called upon to determine.

*Kaiser* v. *Happel* (1941), 219 Ind. 28, 33, 36 N. E. (2d) 784; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 549, 550, 551, 24 N. E. (2d) 284. Therefore, the decision in this case cannot be predicated on mere presumption that because there was a fall that such fall was effected through accidental means.

That ultimate fact must be established by evidence or proper inferences to be drawn from evidence. A finding as to this fact cannot be based upon conjecture, speculation or guess, *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 309, 19 N. E. (2d) 547; *J. C. Penney, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 264, 19 N. E. (2d) 882, and the mere possibility that it may be true will not properly sustain an inference that it is true. *N. Y. Central R. R. Co.* v. *Green, Admx.* (1938), 105 Ind. App. 488, 496, 497, 15 N. E. (2d) 748; *Moorman Mfg. Co.* v. *Barker* (1941), 110 Ind. App. 648, 659, 40 N. E. (2d) 348.

In this case the direct evidence simply shows a woman who was in such state of health that she was weak and subject to dizzy spells and was tottery when she walked. This woman went to her bathroom, which involved walking up a step or two, and fell. All that the direct evidence shows is that she fell and broke her hip. There was no direct evidence of what caused her fall.

The circumstantial evidence is such that the court could not properly draw the inference either that the fall was caused by dizziness and her tottery physical condition or that it was caused by slipping or stumbling or anything else that might fall within the definition of accidental means. To choose either of these alternatives would mean resort to speculation and conjecture.

The case of *Orey* v. *Mutual Life Insurance Co. of N. Y., supra,* was not referred to in appellee's brief, but in the consideration of this case by the court the Orey case has been carefully studied. In the Orey case the insured was a strong, muscular and healthy young truck driver, about 22 years of age, and the evidence showed he had some sort of a mishap while driving his truck, as a result of which he suffered a scrotal strangulated hernia, from which he died. One of the doctors testified that a hernia such as the one in question "would have to be caused by some extremely violent external means." This same doctor said upon cross-examination that in his judgment "the hernia was caused by a blow, or a fall against some object, and that it could not be caused by strain." There was no such evidence in the case before us to sustain an inference of "accidental means."

In the Orey case, at page 309, the following language was used:

> "In the instant case, if the testimony of the expert, who said that the hernia could have been caused by violent external means only, is eliminated, it leaves only the evidence that it might have been caused either by violent external injury, which might be assumed to have been accidental, or by an unusual strain, which might be assumed to have been the result of a voluntary act. The jury might infer that it was one or the other, but a determination without further evidence that it was one rather than the other would depend upon mere speculation or guess, and the trior of facts is not permitted to indulge in such inferences."

That is the situation in the case before us.

In the Orey case it is also said: "There is sufficient evidence that death did not result directly or indirectly from disease or bodily or mental infirmity." In the case before us that cannot be said.

There is no evidence to support the decision of the court and appellant's motion for a new trial should have been sustained. Therefore, the case is reversed with instructions to sustain appellant's motion for a new trial and further proceedings consistent with this opinion.

Gilkison, J., dissenting with opinion.

Starr, J., dissenting with opinion.

Note.—Reported in 59 N. E. (2d) 721.

### DISSENTING OPINION.

GILKISON, J.—This is an action to collect the double indemnity for accidental death provided for in an insurance policy sold to Edith Van Wey by the appellant and which was in full force and effect when she died. The issue joined by the motion for directed verdict presents the single question: Had appellees made a *prima facie* case when they rested?

It is the duty of an appellate tribunal to consider only the evidence tending to support the verdict or finding, and where different inferences might be drawn, it is our duty to adopt the inference which supports the verdict or finding. *Kokomo Life, etc., Ins. Co.* v. *Wolford* (1929), 90 Ind. App. 395, 397, 167 N. E. 156; *Fidelity Health & Accident Co.* v. *Holbrook* (1933), 96 Ind. App. 457, 462, 463, 169 N. E. 57. We can not weigh the evidence.

All rights of the parties in this action are contractual rights and are necessarily contained within the policy sued upon.

The only reasons urged by appellant for a reversal, are, that the evidence does not show that the death had not resulted from bodily or mental infirmity or disease, and does not show that the death was produced by accidental means.

The proviso in the policy upon which this contention is based is as follows: ". . . provided, however, that no accidental death benefit shall be payable if the death of the insured resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form." This proviso in the policy gives the appellant a specific defense, but the mere existence of the proviso in the policy, will not destroy the indemnity provided. The proviso must be proven by a fair preponderance of the evidence in the trial before it becomes controlling. It is wholly unproven in this case.

In considering the evidence we are bound by the rule applicable under the insurance contract. We may not properly apply the rule applicable in *determining the proximate cause of injury,* in tort actions, for wrongful death. *Continental Casualty Company* v. *Lloyd* (1905), 165 Ind. 52, 64, 73 N. E. 824; *Freeman* v. *Mercantile Mutual Accidental Assn.* (1892), 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753. In tort actions it is *the proximate cause of the injury* that determines liability. In actions on accident insurance policies, containing provisos like this one, it is *the proximate cause of the death* that determines liability. In the latter class of cases the line of causation is advanced one step from that in the tort cases. In *Freeman* v. *Mercantile Mutual Accident Assn., supra,* the court said: "What kind of cause is to be deemed proximate within the meaning of the policy?" In answering the question, the court said, among other things:

"The law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient,

predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect." This is quoted with approval in *Continental Casualty Company* v. *Lloyd, supra,* at page 64. It seems to be the law in Indiana.

Of course, had the policy provided that no accidental death benefit should be paid if the *injury* which caused the death resulted from bodily or mental infirmity or disease in any form, a different question would be presented. *Sharpe* v. *The Commercial Travelers' Mutual Accident Association* (1894), 139 Ind. 92, 37 N. E. 353; *Knights and Ladies of Columbia* v. *Shoaf* (1906), 166 Ind. 367, 77 N. E. 738.

The majority opinion correctly states the proof in this case in these words:

> "Admittedly insured died from hydrostatic pneumonia but this disease was the natural result of necessary treatment of the broken hip which in turn was admittedly the result of a fall. The fall set in motion the events which culminated in her death. The fall, therefore, was the proximate cause of the insured's death and in determining liability in a case of this kind it is the proximate cause which is controlling."

Having determined all these facts, a complete case is made for the appellees, agreeable with the rule of *proximate cause of the death* applicable in suits on insurance policies, containing a proviso like that in this case. There was no further question before the lower court, and there can be no further question rightfully for this court to determine. But the majority opinion, then proceeds to apply the rule of *proximate cause of the injury* as applicable only in tort actions for wrongful death, or when the policy expressly includes the word "injury" as well as "death," in its proviso excluding

liability. It goes back in the line of causation one step further than any Indiana court has ever gone in actions on insurance policies, providing indemnity *for accidental death* so far as we can find. The cases cited in the majority opinion on this proposition do not, support it. In *Husbands* v. *Indiana, etc., Accident Assn.* (1924), 194 Ind. 586, 133 N. E. 130, the insured was shaking down the ashes in his furnace, and while so doing ruptured a blood vessel in his right lung causing his immediate death. The question before the court was not the proximate cause of death, but whether the injury was an accident at all or not? This court held that it was not an accident, saying: "We are of the opinion that the better reasoning points out, and the weight of authority holds, the true test to be that, if in the act which precedes the injury, though an intentional act, something unusual, unforseen, and unexpected occurs which produces the injury, it is accidental; but, if in the act which precedes the injury, something usual, forseen and expected occurs which produces the injury, it is not accidentally effected." The court further points out: "And the facts found fail to show that the insured slipped, or stumbled, or that anything fell upon or against him, or that anything whatever that was unforseen or not intended happened to him of an 'external violent' nature, or that he met with an 'accident' of any kind, except that his exertion in shaking down the ashes in his furnace ruptured a blood vessel weakened by disease which he did not intend thereby to rupture."

In *Schmid* v. *Indiana, etc., Accident Assn.* (1908), 42 Ind. App. 483, 85 N. E. 1032, the insured who lived in Indianapolis, Indiana, having an altitude of about 600 feet above sea level, went to Colorado Springs,

Colorado, having an altitude of about 6,000 feet above sea level. He left the station at the latter city with a traveling bag in each hand and walked to the Antlers Hotel, ascending a flight of 100 steps leading to the hotel, and thence went to the lobby of the hotel, where he fell to the floor and expired. So far as shown he was not injured by the fall.

On appeal the court reviewed many cases and held in substance that while the death may have been an "accident" it was not produced by "accidental means," and was therefore not an accidental death within the terms of the policy.

Neither the Husbands case, *supra,* nor the Schmid case, *supra,* even intimate, as stated in the majority opinion, that " . . . injuries received from a fall caused by weakness or physical disability may not properly be said to have been effected solely through accidental means." Time brings weakness and physical disability to all living things. Surely an insurer must know that it brings them to mankind, and it must be bound by its contract with the insured quite as firmly after she becomes weak and disabled, as when she was young, strong and physically perfect enough to be accepted for insurance, unless it has by the contract, expressly exempted itself therefrom.

There is nothing in the policy in suit even remotely suggesting that the insurer will not be liable for the accidental death of the insured if it is the result of a fall to which her "weakness or physical disability" might, in some degree, have contributed. The nearest approached to it is the proviso before quoted. It will, of course, be noted that it is the *death* and not the *injury* of the insured that must result "from bodily or mental infirmity or disease." There is nothing in the evidence, and nothing in the majority opinion indicating

that the fall was due to "weakness" or to "bodily or mental infirmity or disease in any form." Indeed, the majority opinion states, "There was no direct evidence of what caused her fall. " But if there had been such evidence it could not avail the appellant, for it can be relieved from liability only if the *death*, not the *accidental fall*, was the result "directly or indirectly from bodily or mental infirmity or disease in any form." This is the contract that appellant sold to the insured and by which appellant and appellee are bound.

There are many cases in this and other states, where a serious question is presented, whether the injury received by the insured, or a disease with which he was afflicted at the time, caused his death. *Continental Casualty Company* v. *Loyd, supra; Fetter* v. *Fidelity, etc., Co.,* 174 Mo. 256, 97 Am. St. 560, 61 L. R. A. 459. The proviso mentioned in the policy in this case was evidently intended to protect the company in such a situation.

We agree with the majority opinion that the burden was upon the appellees to prove that the *insured's death* occurred as a result of bodily injuries effected solely through accidental means. The majority opinion's excellent summation of the facts proven, conclusively shows that appellees have fully discharged that burden. To the facts recited in the majority opinion we add the following from the evidence of Carrie Van Wey:

> "I observed mother have a fall the morning of January 15, "just as she was going in the bathroom," at 6 o'clock. There's a step going into the bathroom. She had gotten up and as usual was going to the bathroom, and she, I heard her, she called, and of course she fell, and couldn't get up. I picked her up *at the step* and put her back in bed, . . ."

Where, as in this case, there is conclusive proof that the insured fell just as she was going in her bathroom and that she was picked up *at the step,* we must assume that the fall was either accidental or intended. There is no middle ground. All the usual experiences of life repel the thought that it was an intentional fall. All the circumstances, conditions and physical facts existing at the time and place of the fall are fully depicted in the evidence, and are abundantly sufficient to justfy the trial court in inferring that the fall was accidental, caused by the bathroom step. The insured had become aged and feeble, was sometimes dizzy and tottering when she walked—a rather natural result of the usual infirmities of age. The proximate cause of her death was not her age, her feebleness, her occasional dizziness, or her tottering, but was a direct result of *a fall,* that was not forseen, not intended and was a happening of an external, violent nature. It was clearly a death produced by *accidental means. Orey* v. *Mutual Life Ins. Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. (2d) 547.

In the latter case the insured was driving a truck. He left the truck on the road and went to a village store very ill and said he was dying. A doctor was called and found that insured had a scrotal, strangulated hernia from which he died. The only proof concerning the cause of the injury was the conditions and physical facts of the truck and its surroundings when it was examined after decedent had left it, but there was nothing to show what had caused the injury. One doctor testifying said it "would have to be caused by some extremely violent external means."

Referring to the hernia this court said: "whether it was caused by the engine backfiring while he was cranking the truck, or *by a fall* (our italics) or by some other accidental means, is immaterial to recovery."

We think this is a correct statement of the law applicable to the instant case. When the facts proven are sufficient to cause a reasonable person to believe that the injury which caused death was effected solely through external, violent and accidental means, of which there is a visible contusion or wound on the exterior of the body, it is immaterial to recovery just what accidental means caused the injury.

The majority decision is a notable departure from the rule that has prevailed in Indiana with respect to the application of the rule of proximate *cause of death* in insurance cases, extending it to the *proximate cause of the injury,* without any provision in the contract authorizing such extension. We do not believe the court may rightly read the word "injury" into the proviso quoted. To do so changes the contract of the parties, greatly reducing the liability of the insurer. But if it is read into the policy, we think the trial court had lawful evidence, and legitimate inferences from the evidence fully supporting the material averments of the complaint, making a *prima facie* case for appellees.

It is the duty of the courts to construe an insurance policy liberally in favor of the insured. When any reasonable construction can be placed on a policy that will prevent the defeat of insured's indemnification for a loss covered by general language, that construction will be given. "Insurance policies are to be liberally construed in favor of the assured; *and an exception is to be strictly construed against the underwriters.*" (Our italics.) *Grant and Another* v. *The Lexington Fire, Life, etc., Co.* (1854), 5 Ind. 23, 26, 27. This case has been cited with approval as late as *Atkinson, Admr. v. Indiana, etc., Ins. Co.* (1924), 194 Ind. 563, 143 N. E. 629; and *Werner* v. *State Life Insurance Co.* (1937), 104 Ind. App. 27, 7 N. E. (2d) 209, 211. ". . . Indeed, it

is the purpose of strict construction to confine the meaning to the plain and direct import of the language used . . ." *Mark and Another* v. *The Aetna Insurance Company* (1867), 29 Ind. 390, 394. ". . . . Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such construction as will nullify the policy." *German-American Insurance Company* v. *Yeagley* (1904), 163 Ind. 651, 658, 71 N. E. 897; quoting from *The Northwestern Mutual Life Insurance Company* v. *Hazelett* (1886), 105 Ind. 212, 4 N. E. 582. "It is well-settled law that all conditions in policies of insurance which when violated work a forfeiture as against the assured are to be construed liberally in favor of assured and strictly against the insurer"; *German-American Insurance Company* v. *Yeagley, supra,* quoting from *The Aetna Life Insurance Company* v. *Deming, Administrator* (1890), 123 Ind. 384, 24 N. E. 375. "In fact, all limitations in an insurance contract are construed most strongly against the insurer." *Atkinson, Adm.* v. *Indiana, etc., Ins. Co.* (1924), 194 Ind. 563, 568, 143 N. E. 629. See also *Griffin* v. *Prudential Ins. Co. of America,* 102 Utah 563, 133 P. (2d) 333, 144 A. L. R. 1402.

Not only the cases cited but literally dozens of others assert this as the rule to guide the courts in construing insurance policies, and *exceptions* and *provisos* therein contained. It is the rule by which we should be guided in this case.

The judgment of the lower court should be affirmed.

Note.—Reported in 59 N. E. (2d) 721.

### DISSENTING OPINION.

STARR, J.—I accept as correct the statement of facts set out in the majority opinion.

It is admitted in the majority opinion that the proximate cause of the death of deceased was an injury caused solely by violent and external means, with which I agree. This leaves us concerned only with the cause of the injury.

When more than one cause contributes to an injury, and if the facts are such that prudent persons might draw different conclusions therefrom, the question which of the contributing causes is the efficient, proximate, dominant cause is a question for the trier of the facts, which in this case happened to be the court. *Chicago & Eastern Illinois Ry Co.* v. *Whipking* (1932), 96 Ind. App. 167, 170 N. E. 548.

The fact that the deceased was able to walk to the bathroom without assistance, that she fell and was picked up at the step, and that after she fell she called out, are not mere items of conjecture or speculation, but are all items of positive evidence from which the reasonable inference could be drawn that the injury was caused solely by accidental means, namely, that she slipped or stumbled while negotiating the step into the bathroom. To require strict proof as to what the specific accidental means were which caused the injury would preclude a recovery in most cases where there was no eye-witness to the accident.

The courts of the various jurisdictions are at variance as to the burden of proof in actions upon accident policies or accident features of life policies, as to whether injury or death was the result of antecedent disease or other abnormal bodily or mental condition. These various viewpoints are set out in the annotation covering this subject in 144 A. L. R. 1416.

In Indiana the recognized rule in a case like the present one is that the burden of proof is upon the plaintiff to show that death resulted from a bodily

injury, exclusively and independently of all other causes, and that the bodily injured was effected directly through external, violent, and accidental means and was not the result, directly or indirectly, of any disease or mental or bodily infirmities. *Police and Firemen's Ins. Assn.* v. *Blunk* (1939), 107 Ind. App. 279, 20 N. E. (2d) 660. It is in the application of this rule, however, that the difficulties are encountered. This burden of proof can be discharged by circumstantial evidence.

In *Orey* v. *Mutual Life Ins. Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. (2d) 547, the trial court directed a verdict for the defendant. This was a suit founded on a clause in an insurance policy similar to the one now under consideration and which had to do with one who died as the direct result of a hernia. No person saw the accident, but the deceased was seen driving his truck loaded with lumber, and when going up a hill on a dirt road the truck for some reason stopped and backed up for some little distance. He was seen in the road around and beside the truck, and then seen walking up the road toward the village. He came to the village store, appeared to be sick, and announced that he was dying, and was taken to a doctor's office, where the hernia was discovered, and from which he shortly thereafter died. There was evidence that his overalls were torn; that clay and dirt were on the knees of the overalls; that there were scratches and small wounds on his legs. It was found that there was a rock under one of the rear wheels of the truck, and there were foot prints in the dirt around the truck, and the crank was found inserted in the front of the truck in position for cranking. The man who went for the truck found that a ground-wire was loose, but there was no direct evidence as to what the deceased had done or was doing when injured, nor had anybody seen

him at the time he was injured. Judge Fansler, in reversing that case, said in reference to the cause of the injury that "Whether it was caused by the engine backfiring while he was cranking the truck, or by a fall, or by some other accidental means, is immaterial to recovery," although he also said it was necessary that the plaintiff prove that the deceased " 'died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes.' "

As to facts necessary for the plaintiff to prove in a case like the one at bar, see also *Chicago & Eastern Illinois Ry. Co.* v. *Whipking, supra; Kelly* v. *Prudential Ins. Co. of America* (1939), 334 Pa. 143, 6 A. (2d) 55.

In my opinion the evidence in this case together with the inferences which might reasonably flow therefrom are sufficient to sustain the finding of the trial court, and to reverse this case requires this court to weigh the evidence. The judgment should therefore be affirmed.

Note.—Reported in 59 N. E. (2d) 721.